## UNITED STATES BANKRUPTCY COURT
## FOR THE
## DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**KIMANZI MUSILI MATI,**                    Chapter 13
        Debtor                                      Case No. 07-13323-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~~

## MEMORANDUM

## I. INTRODUCTION

The matter before the Court is the Chapter 13 Trustee's Objection to Confirmation of the Debtor's Amended Chapter 13 Plan. The Court conducted a hearing on January 10, 2008 and directed the parties to file an Agreed Statement of Facts and briefs. The parties complied with the Court's order. Kimanzi Musili Mati (the "Debtor") also filed a Request for an Evidentiary Hearing.

## II. FACTS

The Debtor filed a voluntary Chapter 13 petition on May 29, 2007. In addition to his Schedules and Statement of Financial Affairs, the Debtor filed Official Form 22C, the Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income. On that form, he indicated that the applicable commitment period for his Chapter 13 plan was five years. On Line 11, he reported monthly income from all

1

sources in the amount of $9,268.49, which annualized equals $111,221.88, and, on Line 20, pursuant to 11 U.S.C. § 1325(b)(3), he reported current monthly income of $9,268.49. Because his income exceeds the applicable median income for his household size of two, he completed Part IV of Form 22C, the Calculation of Deductions Allowed under § 707(b). The Debtor, on Line 38, claimed $6,484.06 for Total Expenses Allowed Under IRS Standards, including $300 on Line 27 under the Local Standards for "transportation; vehicle operation/public transportation expense" and $471 on Line 28 under the Local Standards for "transportation ownership/lease expense; Vehicle 1."[1]   On Line 46, he claimed an Additional Expense Deduction under § 707(b) for health insurance in the amount of $75.43. In Subpart C, Deductions for Debt Payment, the Debtor deducted $298.82 for payment of priority claims and $200 attributable to the average monthly administrative expense for his Chapter 13 case.  He reported total deductions under § 707(b)(2) on Line 52 in the amount of $7,058.31.  On Line 55, he also claimed $463.45 for qualified retirement contribution deductions, which he added to the deductions allowed under § 707(b) resulting in Monthly Disposable Income under § 1325(b)(2) of $1,746.73.

On his Schedules, the Debtor listed no real property and no secured debt. On Schedule E-Creditors Holding Unsecured Priority Claims, he listed the IRS with a claim in the amount of $19,084, of which $1,899 was entitled to priority.  Similarly, he listed the Massachusetts Department of Revenue with a claim in the sum of $898, of which $154 was

---

[1] Official Form 22C at Line 28 requires a debtor to deduct the "Average Monthly Payment for any debts secured by Vehicle 1, as stated in Line 47" to determine the "New ownership/lease expense for Vehicle 1."

entitled to priority.  On Schedule F-Creditors Holding Unsecured Nonpriority Claims, he listed $92,037 in primarily credit card debt.

On Schedules I and J-Current Income and Expenses of Individual Debtor(s), the Debtor disclosed that he was employed as a software engineer and his spouse was unemployed.  He listed his gross income from wages and salary in the sum of $8,333.33 and monthly average income in the sum of $5,638.05, disclosing his 401(k) contribution in the sum of $463.45.  He listed monthly expenses totaling $4,391.25, resulting in monthly net income of $1,246.80

On June 5, 2007, the Debtor filed a Chapter 13 plan in which he proposed monthly payments in the amount of $1,163 for 60 months.  He proposed to pay priority tax debt in the sum of $17,929, the administrative claim of his attorney in the sum of $2,000, and a dividend of 45.6% to his unsecured creditors.

On July 27, 2007, the Chapter 13 Trustee objected to his plan.  Noting that the Debtor's Schedules I and J showed net monthly disposable income of $1,246.80, the Trustee complained that the Debtor was not submitting all his projected disposable income to payment of his unsecured creditors.  She questioned his Schedule J expense of $450 for "haircuts, personal care, gym," as well as his  expense of $431.25 for "immigration - legal fees/INS."  In response to the Debtor's position, which he advanced at the section 341 meeting of creditors, namely that he derived the plan payment amount of $1,163 from his

3

Schedule I income and Official Form 22C expenses,[2] the Trustee asserted that the Debtor's income and expenses on Form 22C were miscalculated and that he should be required to pay $1,533.07 per month to his unsecured creditors. The Trustee noted that the Debtor's claimed tax expense of $2,381.13 was based on monthly gross income of $9,268.49, not $8,333.33, resulting in overstatement of the Debtor's tax expense by $251.13. She also noted that he listed a vehicle operation expense on Line 27 of $300 per month plus a vehicle ownership expense of $471 per month on Line 28. The Trustee asserted that the Debtor was not entitled to the $471 expense because his vehicle is neither leased nor encumbered with a lien. According to the Trustee, the Debtor's disposable income, if calculated correctly, should have been $1,533.87 to take into account an overstated tax deduction of $251 and the amount of $471 attributable to the vehicle ownership expense.[3]

The Debtor filed a Response to the Trustee's Objection, indicating that because he changed employment he would be filing an amended plan, although he noted that her Objection based on his Schedule J expenses was irrelevant in view of the provisions of 11 U.S.C. § 1325(b)(3).

The Court conducted a hearing on September 6, 2007 and sustained the Trustee's Objection. The Court ordered the Debtor to file amended Schedules I and J and an

---

[2] The Court is unable to determine how the Debtor arrived at his proposed plan payment. Schedule I income of $8,333.33 and Form 22C expenses of $7,058.31 do not yield $1,163, but rather $1,275.02, a sum just $28.22 more than his average monthly income based on Schedules I and J.

[3] The Court cannot reconcile the Trustee's figure either.

4

Amended Plan by October 5, 2007. The Debtor complied. On Amended Schedule I, which he filed on October 4, 2007, the Debtor disclosed that he recently had obtained new employment. He listed monthly gross income of $9,666.67, payroll tax and social security deductions of $2,449.39, an insurance deduction in the sum of $645.99 and a 401(k) contribution deduction in the sum of $966.66, resulting in net average monthly income of $5,604.67. The Debtor submitted an amended Schedule J using the IRS standard deductions and allowances, which totaled $4,497.82, leaving monthly net income of $1,106.85. The Debtor also filed an Amended Plan in which he proposed to pay $1,107 for 60 months. In short, although the Debtor's new employer paid him $1,333.34 more, he proposed to pay $56 less toward his plan. Because the proof of claim deadline, set to expire on October 9, 2007, had not passed, the Debtor listed total unsecured claims in the amount of $78,164.76 and proposed to pay a dividend of 49%.[4]

On October 26, 2007, the Trustee objected to the Debtor's Amended Plan. She noted that, despite his increased gross earnings, his net average monthly income decreased from $5,698.05 [sic] to $5,604.67 due to an increase in his monthly 401(k) contribution. By her calculation, his prior 401(k) contribution constituted 5.56% of his monthly income while his new contribution amount constitutes 10% of his gross income. She stated:

> If the Debtor had not increased the amount of the contribution, the Debtor's 401(k) contribution based on the new salary would be $537.46/month, which would leave additional income of $429.20 that could have been devoted to

---

[4] The Court's Claims Register shows total unsecured claims in the sum of $69,630.41, priority claims in the sum of $17,866.38 and secured claims in the sum of $1,338.94. The Debtor has not objected to any proofs of claim.

5

the payment of creditors. The Trustee asserts that the Debtor must decrease
the contribution to the same level as when he filed the petition and devote
the remaining funds to payment of creditors. Therefore, the Plan cannot be
confirmed pursuant to 11 U.S.C. § 1322(a)(1) and 1325(b).

The Trustee asserted that the Debtor's conduct in increasing his 401(k) contribution "to
avoid paying additional moneys to creditors amounts to bad faith." The Trustee also
objected to the Debtor's use of Form 22C expenses in the sum of $4,497.82 on Schedule J,
when his original Schedule J expenses were $4,319 per month.

Finally the Trustee maintained that the Debtor miscalculated his expenses on Form
22C. Consistent with her Objection to the Debtor's original plan, she asserted that on Line
27 the Debtor correctly listed a vehicle operation expense of $300 per month, but that on
Line 28 he improperly listed a transportation ownership/lease expense of $471 per month,
even though there is no lien on his automobile. Additionally, she asserted that he must
recalculate his tax expense for his Schedule I monthly income of $9,666,67. Using her
revised figures, the Trustee stated the Debtor should make a monthly plan payment of
$2,378.04, a sum sufficient to pay a 100% dividend to his unsecured creditors.

On March 17, 2008, the Debtor filed "Amendment of Schedule J, explaining that he
utilized the standardized expenses set forth at 11 U.S.C. §§ 1325(b)(3) and 707(b)(2)(A)(ii)(I)
on his amended Schedule J ($4,497.82) and his actual expenses had changed from those
listed on his original Schedule J ($4,391.25).[5] Using average net monthly income of $5,604,
less his revised expenses, the Debtor disclosed monthly net income of $1,138.72, an amount

---

[5] Although the Debtor represented that he filed an amended Schedule J on March
17, 2008, he did not.

$312 greater than his proposed plan payment.

## III. DISCUSSION

The parties focus on two issues: the propriety of the Debtor's 401(k) contribution and his expense deductions on Lines 27 and 28 of Official Form 22C.  The Court shall address the issues raised in that sequence.

A. <u>Retirement Plan Contributions</u>

The Debtor's 401(k) contributions are not property of the estate and do not constitute disposable income under section 1325(b).  Section 541(b)(7) expressly provides the following:

> (b) Property of the estate does not include - - . . .
> > (7) any amount  - -
> > > (A) withheld by an employer from the wages of employees for payment as contributions–
> > > > (i) to–
> > > > (I) an employee benefit plan that is subject to title I of the Employee Retirement Income Security Act of 1974 or under an employee benefit plan which is a governmental plan under section 414(d) of the Internal Revenue Code of 1986;
> > > > (II) a deferred compensation plan under section 457 of the Internal Revenue Code of 1986; or
> > > > (III) a tax-deferred annuity under section 403(b) of the Internal Revenue Code of 1986;
> > > except that such amount under this subparagraph shall not constitute disposable income as defined in section 1325(b)(2); or
> > > > (ii) to a health insurance plan regulated by State law whether or

not subject to such title; or

(B) received by an employer from employees for
payment as contributions–
  (i) to–
  (I) an employee benefit plan that is
  subject to title I of the Employee
  Retirement Income Security Act of
  1974 or under an employee benefit
  plan which is a governmental plan
  under section 414(d) of the Internal
  Revenue Code of 1986;
  (II) a deferred compensation plan
  under section 457 of the Internal
  Revenue Code of 1986; or
  (III) a tax-deferred annuity under
  section 403(b) of the Internal
  Revenue Code of 1986;
except that such amount under this
subparagraph shall not constitute disposable
income, as defined in section 1325(b)(2). . . .

11 U.S.C. § 541(b)(7)(A) and (B).  Despite the express language of the statute, the Trustee,

relying upon section 1325(a)(3)[6] and citing In re Shelton, 370 B.R. 861, 867 (Bankr. N.D. Ga.

2007), argues that, although "good faith has no role in assessing whether the amount of

income paid into the plan is sufficient, . . . good faith is relevant to confirmability of the

plan."

    In Shelton, the debtor proposed a zero percent dividend (or 0% payout) to

unsecured nonpriority creditors, a payment to secured creditors of $550 a month, and a

---

    [6] Section 1325(a)(3) and (a)(7) provide that "[e]xcept as provided in subsection
(b), the court shall confirm a plan if - - . . . (3) the plan has been proposed in good faith
and not by any means forbidden by law; . . .[and] . . . (7) the action of debtor in filing the
petition was in good faith."  11 U.S.C. § 1325(a)(3) and (7).

8

contribution of $655 a month to his retirement plan. According to the court, "[t]he

proposed plan would permit Debtor, over the course of the plan, to shelter $39,300 in his

retirement account, pay approximately $33,000 to secured creditors or lose the assets

representing collateral, pay nothing to unsecured creditors, and discharge $89,237 in,

primarily, credit card debt." 370 B.R. at 868. In addressing the Chapter 13 trustee's

objection to confirmation under section 523(a)(3), the court observed:

> While it is apparent that Congress removed certain streams of income from
> being considered disposable income by exemption or deduction, it does not
> necessarily follow that Congress intended to handicap the courts' good faith
> inquiries or unintentionally create a proverbial "loophole." Unlike previous
> amendments that have eclipsed particular *Kitchens*' factors, BAPCPA
> expressly limited the application of § 541(b)(7) to one particular paragraph,
> § 1325(b)(2). Section 1325(b)(2) is also limited to a specific application: "[f]or
> purposes of this subsection." Had Congress sought to soften the good faith
> requirement, a statement to that effect is conspicuously absent. While it is
> true that Congress provided more protection for retirement accounts, a
> primary focus of BAPCPA is to enable the courts to ferret out abuses of the
> law. See 11 U.S.C. § 1325(a)(7).

370 B.R. at 867. The court added: "BAPCPA does not direct a court to abandon viewing the

totality of the circumstances, nor impose a requirement that a court blind itself to the full

picture of a debtor's finances. Before the passage of BAPCPA, Congress had amended the

Code to remove certain other factors from the scope of § 1325(a)(3) without discrediting the

totality-of-the-circumstances approach." Id. In view of the debtor's circumstances, the

court concluded that "such a grossly disproportionate plan invites scrutiny." Id. at 868.

It determined:

> Achieving an appropriate balance between payment of unsecured creditors
> and saving retirement funds is the natural end of viewing the totality of
> Debtor's circumstances. That result cannot be achieved in this case without

9

additional evidence only Debtor can provide, including the details of all
prepetition contributions to any retirement account(s) by providing pay
advices, institutional statements or sworn statements by the account
administrator for any retirement plan, beginning with the first contribution
through the present; and including documentation regarding any loan from
any retirement account.

Id. 869.

In response to the Trustee's argument, the Debtor, citing Keach v. Boyajian (In re

Keach), 243 B.R. 851 (B.A.P. 1st Cir. 2000), argues that his election to exercise a right

granted to him under the Bankruptcy Code to make retirement plan contributions cannot

be used to show an absence of good faith.

In In re Gonzalez-Ruiz, 341 B.R. 371 (B.A.P. 1st Cir. 2006), the bankruptcy appellate

panel noted that the decision in Keach has been criticized. It observed:

As was noted in In re Hadsell, 327 B.R. 520, 525 n. 8 (Bankr. D. Mass.
2005):The Keach decision has been criticized by some courts and
commentators who have suggested that its holding limits a court's
consideration of a debtor's postpetition good faith only to the debtor's
postpetition behavior. That criticism is misplaced and the Keach holding
apparently misunderstood. A court's consideration of postpetition honesty
of purpose is frequently informed by a debtor's prepetition conduct. In re
Keach, 243 B.R. at 868-71. Keach stands for a more subtle proposition: that a
court may not alter rights that a debtor has been granted by Congress (e.g.,
the right to make a new non-serial Chapter 13 filing; the right to pay a
dividend unaffected by the nature of a debt which Congress has expressly
declared dischargeable; and the right to then discharge that debt) by
determining that those rights are unfair or inequitable based on the court's
distaste for Congress' choices. In re Keach, 243 B.R. 851.

Gonzalez-Ruiz, 341 B.R. at 383 n. 15.

The Court finds that the Debtor's 401(k) contributions do not evidence bad faith

under the totality of the circumstances in this case. The Debtor is merely taking advantage

10

of what the law allows.[7]  Indeed, by excluding 401(k) contributions from property of the estate and expressly removing them from the definition of disposable income under section 1325(b), *see* 11 U.S.C. § 541(b)(7), Congress has implemented a policy of protecting and encouraging retirement savings.  As noted by the court in <u>In re Johnson</u>, 346 B.R. 256, 262-63 (Bankr. S.D. Ga. 2006), BAPCPA's amendments to section 1325(b) alter the good faith inquiry under section 1325(a)(3) by narrowing the scope of judicial discretion and excluding certain sources of income that do not need to be committed to Chapter 13 plans.  In particular, debtors, pursuant to section 541(b)(7), may shelter contributions to certain qualified employee benefit plans.  <u>Id.</u> at 263.  The court in <u>Johnson</u> concluded that the debtors could fund their 401(k) plans in good faith as long as their contributions did not exceed the limits legally permitted by their 401(k) plans.

The  facts of the instant case simply are not analogous to those present in <u>Shelton</u>, where the debtor was paying nothing to his unsecured creditors.  In this case, the dividend to unsecured creditors most likely will be in excess of 50% in view of the disparity between the amount of unsecured claims on file ($69,630.41) and the amount provided for in the Debtor's plan ($78,164.76).  Thus, this Court cannot find that an evidentiary hearing is required to scrutinize the Debtor's conduct with respect to his 401(k) contributions.  The facts in the present case do not raise the specter of abuse that warranted the court in

---

[7] This case is analogous to those cases which have held that the recordation of a homestead on real property is not a transfer under the Uniform Fraudulent Conveyance Act.  *See* <u>In re Lyons</u>, 335 B.R. 387, 390 (Bankr. D. Mass. 2006); <u>In re Miller</u>, 113 B.R. 98, 104 (Bankr. D. Mass. 1990).

Shelton to schedule an evidentiary hearing.  This Court does not disagree with the Court

in Shelton that under appropriate circumstances, particularly if the debtor's contributions

exceed those legally permitted,  a good faith inquiry may be warranted.  This is not such

a case.

     B. The Debtor's Expense Deductions under 11 U.S.C. §§ 707(b)(2)(A)(ii)(I) and

1325(b)(3).

      The Trustee argues that the Debtor is not entitled to an expense deduction in the

amount of $471 under the Local Standards for "transportation ownership/lease expense."

Official Form 22C at Line 28 provides above-median debtors with a deduction for "IRS

Transportation Standards, Ownership Costs, First Car" from which the debtor must deduct

his "Average Monthly Payment for any debts secured by Vehicle I, as stated in Line 47,"

resulting in the "Net ownership/lease expense for Vehicle 1."   Line 47 is in Subpart C:

Deductions for Debt Payment.  Line 47 contemplates a listing of debts for "future payments

on secured claims."  Debtors are entitled to deduct the "Average Monthly Payment," which

"[i]s the total of all amounts contractually due to each Secured Creditor in the 60 months

following the filing of the bankruptcy case, divided by 60."

     The expenses associated with vehicle operation/public transportation expense, such

as gasoline, passes for use of buses or trains, could easily be $300 per month.  The issue is

whether the Debtor may also deduct $471 per month, or $5,652 per year, for a vehicle

ownership expense when he has no lease or car payment.

     Although the Trustee recognizes that a split of authority exists, she urges the Court

to follow the decision in <u>In re Ransom</u>, 380 B.R. 799 (B.A.P. 9th Cir. 2007).  In <u>Ransom</u>, the United States Bankruptcy Appellate Panel for the Ninth Circuit addressed the identical issue to the one now before this Court: "[w]hether, in determining projected disposable income for purposes of chapter 13 plan confirmation, the debtor can deduct a vehicle ownership expense pursuant to § 707(b)(2)(A)(ii)(I), notwithstanding that the debtor owns the vehicle free and clear of any liens or encumbrances."  380 B.R. at 802.  The panel in <u>Ransom</u> answered the question in the negative.

Section 1325(b)(2) defines "disposable income" as current monthly income received by the debtor . . . "less amounts reasonably necessary to be expended [for certain purposes]." *See* 11 U.S.C. § 1325(b)(2).  Subsection 1325(b)(3) provides that for above median income debtors "[a]mounts reasonably necessary to be expended . . . shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2). *See* 11 U.S.C. §§ 707(b)(2)(A) and (B) and 1325(b)(3).

Pursuant to section 707(b)(2)(A)(ii)(I),

[t]he debtor's monthly expenses *shall be the debtor's applicable monthly expense amounts* specified under the National Standards and Local Standards, and the debtor's *actual monthly expenses* for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides, as in effect on the date of the order for relief, for the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case, if the spouse is not otherwise a dependent.

11 U.S.C. § 707(b)(2)(A)(ii)(I)(emphasis supplied). Thus, the expenses which an above median income Chapter 13 debtor must use are not derived from a debtor's actual expenses, but are the predetermined and immutable expenses issued by the Internal

13

Revenue Service. *See* In re Petro, 381 B.R. 233, 237-38 (Bankr. M.D. Tenn. 2008).  In

Ransom, the bankruptcy appellate panel observed:

> The IRS provides its Manual at its website,
> http://www.irs.gov/irm/index.html. Part 5, Chapter 15, Section 1.7,
> Subsection 4.B of the Manual provides: Transportation-The transportation
> standards consist of nationwide figures for loan or lease payments referred
> to as ownership cost, and additional amounts for operating costs broken
> down by Census Region and Metropolitan Statistical Area. Operating costs
> were derived from BLS [Bureau of Labor Statistics] data. If a taxpayer has a
> car payment, the allowable ownership cost added to the allowable operating
> cost equals the allowable transportation expense. If a taxpayer has no car
> payment only the operating cost portion of the transportation standard is
> used to figure the allowable transportation expense. Under ownership costs,
> separate caps are provided for the first car and second car. If the taxpayer
> does not own a car a standard public transportation amount is allowed.

380 B.R. at 803 n.10.  It also noted that at least according to one court,

> [T]the advisory committee note to Form B22C indicates that the
> ownership/lease component does not require the debtor to make lease or
> loan payments on the vehicle. In re Crews, No. 06-13117, 2007 WL 626041 at
> *4 (Bankr. N.D. Ohio Feb.23, 2007). The advisory committee note states: "The
> ownership/lease component . . . may involve debt payment." The court
> concluded that the use of the word "may" implies that debt payment on the
> vehicle is not a prerequisite in asserting the deduction.

Id. at 804 n. 12.  This interpretation is supported by the views of the Advisory Committee

on Bankruptcy Rules which drafted the Official Form.  Although the Bankruptcy Rules

Committee initially took no position on whether a debtor could claim the Local Standard

transportation ownership/lease expense on Line 28 of Official Form 22C if the debtor was

not making a note or lease payment, it later rejected the suggestion that the form allow a

vehicle ownership deduction *only* if the debtor is actually making note or lease payments

on a vehicle.   *See* 2005 Committee Note to Official Forms B22A, B, C at

http://www.uscourts.gov/rules/BK_Forms_08_Official/B_22_CN_Cum08.pdf, and the Minutes of the Meeting of March 8-10, 2006, http://www.uscourts.gov/rules/Minutes/BK03-2006-min.pdf at p. 18.[8]  *See also* Interim Fed. R. Bankr. P. 9009("The Official Forms prescribed by the Judicial Conference of the United States shall be observed and used with alterations as may be appropriate. . . .").

Although the Internal Revenue Manual and the advisory committee note are informative, they are not dispositve of the issue, and there is a sizable and significant split of authority in the case law.  Courts have struggled with the language used in section 707(b)(2)(A)(ii)(I) and the meaning to be ascribed to "*applicable* monthly expenses amounts under the National Standards and Local Standards" in contrast to the meaning ascribed to "the debtor's *actual* expenses" for the categories of expenses set forth under "Other Necessary Expenses." (Emphasis supplied).  *See* In re Wilson, 383 B.R. 729, 732 (B.A.P. 8th Cir. 2008) (citing In re Clark, No. 07-23390, 2008 WL 444565 at *2-*3 (Bankr. E.D. Wis. Feb. 14, 2008)); In re Ransom, 380 B.R. at 804-06.[9]

---

[8] The minutes provide:
The FSR [Financial Services Roundtable] suggested changing the forms to allow an automobile ownership deduction only if the debtor is actually making lease or note payments on an owned vehicle. *The working group recommended no changes because this issue was considered and rejected by the Committee at its last meeting.* (Emphasis in original).

[9]  In In re Sawdy, 362 B.R. 898 (Bankr. E.D. Wis. 2007), *rev'd* Grossman v. Sawdy, 384 B.R. 199 (E.D. Wis. 2008), the bankruptcy judge reviewed the decisions on both sides of the issue and summarized the major rationales from them, finding six: (1) the "Plain Meaning" Rationale; (2) the Unfair Results Rationale; (3) the "Ownership/Liability" Distinction Rationale; (4) the Policy Rationale; (5) the Applicable vs. Actual Rationale; and (6) the Reliance on IRS Materials Rationale. 362 B.R. at 903-911.  *See also* In re Swan,

Many courts focus on the "applicable" versus "actual" dichotomy.  The panel in

Ransom articulated the rationale for allowing both deductions based upon that dichotomy:

> For these courts, "applicable" is not synonymous with "actual." *See, e.g.*, In re Farrar-Johnson, 353 B.R. 224, 230-31 (Bankr. N.D. Ill. 2006); In re Fowler, 349 B.R. 414, 418 (Bankr. D. Del. 2006); In re Demonica, 345 B.R. 895, 902 (Bankr. N.D. Ill. 2006); In re Enright, No. 06-10747, 2007 WL 748432 at *5 (Bankr. M.D.N.C. March 6, 2007). They reason that "applicable" and "actual" must each have its own distinct meaning because each term, used in the same sentence, modifies a particular expense category. Enright, 2007 WL 748432 at *5.
>
> These courts infer that the use of these two terms "indicates Congressional intent to distinguish between the two classes of expenses." In re Swan, 368 B.R. 12, 18 (Bankr. N.D. Cal. 2007) (emphasis added). *Accord* In re Chamberlain, 369 B.R. 519, 524-25 (Bankr. D. Ariz. 2007); In re Billie, 367 B.R. 586, 591 (Bankr. N.D. Ohio 2007); In re McIvor, No. 06-42566, 2006 WL 3949172 at *4 (Bankr. E.D. Mich.  Nov.15, 2006); In re Wilson, 356 B.R. 114, 119 (Bankr. D. Del. 2006); Farrar-Johnson, 353 B.R. at 230. That is, by using two different terms, Congress intended to "achieve two different results." Chamberlain, 369 B.R. at 525; Enright, 2007 WL 748432 at *5.
>
> The court in Chamberlain states its rationale for interpreting the term "applicable" as follows: "[A]pplicable is an adjective that modifies the 'amounts specified' in the Standards. It does not modify 'debtor's monthly expenses,' which appears at the beginning of § 707(b)(2)(A)(ii)(I)." 369 B.R. at 524. *See also* In re Haley, 354 B.R. 340, 344 (Bankr.D.N.H.2006) ( "[I]n section 707(b)(2)(A)(ii)(I), the term 'applicable' modifies the phrase 'monthly expense amounts specified under the . . . Local Standards.' ").
>
> Accordingly, for these courts, "applicable" references the Local Standards that apply to the debtor as determined by his or her place of residence. *See* Chamberlain, 369 B.R. at 524; In re Briscoe, 374 B.R. 1, 10 (Bankr.D.D.C.2007); Enright, 2007 WL 748432 at *6; Haley, 354 B.R. at 344; McIvor, 2006 WL 3949172 at *4; In re Prince, No. 06-10328C-7G, 2006 WL 3501281 at *2 (Bankr. M.D.N.C.  Nov.30, 2006); Wilson, 356 B.R. at 119; Farrar-Johnson, 353 B.R. at 230-31. Put another way, whether a monthly expense amount as specified under the Local Standards is applicable to the debtor depends on the number

---

368 B.R. 12, 17 (Bankr. N.D. Cal. 2007).

of vehicles he or she owns or leases and on where he or she resides. <u>Haley</u>,
354 B.R. at 343-44.

Some courts refer to Form B22C as additional evidence that the debtor can
take the vehicle ownership expense deduction, regardless of whether he or
she makes a lease or loan payment on a vehicle. These courts reason that, on
Form B22C, "[i]f the form is filled out correctly the debtor is always allowed
at least the standard ownership cost regardless of the existence of or the
amount of an actual automobile expense payment." <u>In re Wilson</u>, 373 B.R.
638, 642 (Bankr. W.D. Ark. 2007). *Accord* <u>Crews</u>, 2007 WL 626041 at *4; <u>Prince</u>,
2006 WL 3501281 at *3; <u>In re Demonica</u>, 345 B.R. at 902; <u>In re Naslund</u>, 359
B.R. 781, 792 (Bankr. D. Mont. 2006). Thus, § 707(b)(2)(A)(ii)(I) provides a
fixed expense deduction in terms of "Ownership Costs," not a limitation.

<u>Ransom</u>, 280 B.R. at 803-05 (footnotes omitted).

Courts adopting the view that the deduction is impermissible, according to the

panel in <u>Ransom</u>, "read 'applicable' less restrictively. They read 'applicable' to mean that

the debtor can deduct a vehicle ownership expense under the Local Standards only if he

or she has such an expense in the first place." <u>Id.</u> at 805 (citing <u>Neary v. Ross-Tousey (In</u>

<u>re Ross-Tousey)</u>, 368 B.R. 762, 765 (E.D. Wis. 2007); <u>Fokkena v. Hartwick</u>, 373 B.R. 645, 650

(D. Minn. 2007); <u>In re Garcia</u>, No. 07-00268, 2007 WL 2692232 at *4 (Bankr. D. Ariz. Sept. 11,

2007); <u>In re Canales</u>, 377 B.R. 658, 665-66 (Bankr. C.D. Cal. 2007); <u>In re Brown</u>, 376 B.R. 601,

606 (Bankr. S.D. Tex. 2007); <u>In re Ceasar</u>, 364 B.R. 257, 262 (Bankr. W.D. La. 2007); <u>In re</u>

<u>Howell</u>, 366 B.R. 153, 157 (Bankr. D. Kan. 2007); <u>In re Carlin</u>, 348 B.R. 795, 798 (Bankr. D.

Or. 2006); <u>In re McGuire</u>, 342 B.R. 608, 613 (Bankr. W.D. Mo. 2006). The panel in <u>Ransom</u>

explained:

Under this reading, though the debtor's "actual" expense does not
necessarily control the amount of the deduction, "the debtor must still have
some expense in the first place before the Standard amount becomes
'applicable.'" <u>Ross-Tousey</u>, 368 B.R. at 765 (emphasis in original).

17

According to these courts, this reading does not equate "actual" with "applicable." "Applicable" describes "something that is 'capable or suitable for being applied' "-that is, appropriate. Garcia, 2007 WL 2692232 at *4 (quoting Merriam-Webster's Online Dictionary, www. wm. com/dictionary). *See also* Howell, 366 B.R. at 157 (reasoning that, by employing the word "applicable," which the dictionary defines as "capable of being applied" or "readily applicable or practical," the drafters of the statute suggest that the standards must be interpreted in the context of the Manual). If the debtor has no lease or loan payments to report on Form B22C, then there is no deduction under the Local Standard. Garcia, 2007 WL 2692232 at *4. *See also* Ross-Tousey, 368 B.R. at 765.

These courts believe that construing the statute in this manner "gives meaning to the distinction between 'applicable' and 'actual' " without necessarily concluding that "applicable" means an actual expense up to the Local Standards cap. Id. If interpreted to allow the debtor the full amount of the deduction, regardless of whether the debtor in fact makes loan or lease payments, then the term "applicable" would be superfluous. In re Wiggs, No. 06-70203, 2006 WL 2246432 at *2 (Bankr. N.D. Ill. Aug. 4, 2006). If so interpreted, it simply is not necessary to the sense of § 707(b)(2)(A)(ii)(I).

In further support of this rationale, some of these courts consider the Manual as an aid in interpreting the language of § 707(b)(2)(A)(ii)(I). *See* Slusher, 359 B.R. at 309; Talmadge, 371 B.R. at 100-01; Oliver, 350 B.R. at 301 n. 4; Hardacre, 338 B.R. at 726; Carlin, 348 B.R. at 797. The Manual provides that the Transportation Standard is the maximum a taxpayer may claim-it fixes the deduction at the allowance under the Local Standard or the amount actually paid, whichever is less. The Manual further specifies that the Transportation Standards "consist of nationwide figures for loan or lease payments referred to as ownership cost, and additional amounts for operating costs broken down by Census Region and Metropolitan Statistical Area." (emphasis added). It also states that if the taxpayer has no car payment, only the operating cost portion of the Transportation Standard is used to calculate the allowable transportation expense. As the Manual itself prohibits the debtor from asserting the vehicle ownership expense deduction when he or she has no loan or lease payments on a vehicle, these courts reason that § 707(b)(2)(A)(ii)(I) does not allow such a deduction either.

Ransom, 380 B.R. at 805-06 (footnotes omitted).

Having reviewed the rationales of courts on both sides of the issue, the bankruptcy

18

appellate panel in <u>Ransom</u> determined the issue under the "plain meaning" rationale,

citing <u>Matter of Ross-Tousey</u>, 368 B.R. at 765.  It stated:

> The ordinary, common meaning of "applicable" further impels us to this
> conclusion. "Applicable," in its ordinary sense, means "capable of or suitable
> for being applied." Merriam-Webster's Collegiate Dictionary 60 (11th
> ed.2005). Given the ordinary sense of the term "applicable," how is the
> vehicle ownership expense allowance capable of being applied to the debtor
> if he does not make any lease or loan payments on the vehicle? In other
> words, how can the debtor assert a deduction for an expense he does not
> have? If we granted the debtor such an allowance, we would be reading
> "applicable" right out of the Bankruptcy Code.

380 B.R. at 807-08.  The panel also rejected the debtor's equitable arguments that allowance

of the deduction was warranted due to the age of his automobile and the likelihood that

it would need major, expensive repairs. <u>Id.</u> at 808.

At this time, courts are about evenly split as to whether the deduction is permissible,

although all appellate courts considering the issue, including bankruptcy appellate panels

in the Eighth and Ninth Circuits, have concluded that the deduction is not permissible.

Nevertheless, the decision in <u>Ransom</u> has been criticized, a point made by the Debtor.  In

<u>In re Sawicki</u>, No. 2-07-bk-3493-CGC, 2008 WL 410229 (Bankr. D. Ariz. Feb. 12, 2008), the

court stated:

> [T]he BAP's analysis is flawed. The BAP has developed a definition for
> "applicable" that is without a principled basis and glosses over what has
> been the heart of the controversy. The BAP fails to address why Congress felt
> it was necessary to identify two separate expense deductions under §
> 707(b)(2)(A)(ii)(I). The BAP fails to address why if only actual expenses are
> to be used in considering the vehicle ownership deduction Congress
> explicitly separated "applicable monthly expense amounts specified under
> the National Standards and Local Standards" from actual monthly expenses
> for the categories specified as "Other Necessary Expenses" in the statute.

19

2008 WL 410229 at *4 (footnote omitted).

In In re White, 382 B.R. 751 (Bankr. C.D. Ill. 2008), the court, in rejecting the Chapter

13 trustee's argument that allowing a debtor with no car payment to deduct the IRS

standard allowance on Line 28 would be absurd, cogently observed the following:

> As other courts have recognized, a likely purpose of incorporating the IRS
> expense standards into the Bankruptcy Code was to make the means test
> analysis in Chapter 7 and the disposable income analysis in Chapter 13 more
> uniform on a national basis by eliminating variations in expenses allowed
> from trustee to trustee and from court to court. The use of fixed expense
> allowances levels the playing field for debtors. It is far less defensible from
> a policy perspective for a debtor with one car payment remaining at the time
> of filing to get the full standard deduction for the 60-month term of the
> Chapter 13 plan, while a debtor who paid off the secured debt before filing
> gets no deduction whatsoever.

382 B.R. at 758 (citations omitted).  It added:

> The UST contends that because a primary goal of BAPCPA was to ensure
> that debtors repay creditors the maximum they can afford, a debtor without
> a car payment should not be allowed an ownership deduction. In the context
> of an over-median Chapter 13 debtor, the UST's premise is false.
> Pre-BAPCPA, all Chapter 13 debtors had to justify their actual expenses as
> reasonable and necessary. Luxury car payments were often disallowed or
> reduced. BAPCPA changed that paradigm to one where over-median
> debtors are allowed to deduct their secured debt payments without regard
> to reasonableness or necessity, and are allowed the IRS standard deductions
> even where they actually spend less.  Over-median debtors are treated far
> more favorably with respect to expense allowances under BAPCPA.

Id. (footnote omitted).

This Court has had the opportunity to review section 707(b)(2)(A)(ii)(I) in the context

of an objection by the Chapter 13 Trustee to a plan proposed by an above-median income

debtor whose housing expenses were significantly less than those allowed under the Local

Standard.  See In re Phillips, 382 B.R. 153 (Bankr. D. Mass. 2008). Citing In re Briscoe, 374

20

B.R. 1, 6 (Bankr. D. D.C. 2007), this Court considered whether the Local Standards were fixed deductions  or caps permitting debtors to deduct the amount actually paid or the local standard whichever was less.  This Court aligned itself with those courts that construe "applicable expense amounts" differently than "actual monthly expenses" that may be deducted for "Other Necessary Expenses."  382 B.R. at 164.  Moreover, this Court aligned itself with those courts rejecting reliance on the Internal Revenue Manual because its contents are directed at "a specific audience (tax collectors) for a specific purpose (collecting delinquent taxes)."  Id. (citing Briscoe, 374 B.R. at 9, and In re Chamberlain, 369 B.R. 519, 525-26 (Bankr. D. Ariz. 2007)).  Thus, the reference in § 707(b)(2) to the Local Standards is not a shorthand way of referring to the Financial Analysis Handbook or the Internal Revenue Manual, but rather denotes an entirely separate source of information.

In view of the reasoning of courts in White, 382 B.R. at 758, and Sawicki, 2008 WL 410229 at *4, as well as the decisions allowing both deductions cited by the panel in Ransom, such as Farrar-Johnson, 353 B.R. 230-31, the Court concludes that the Debtor is entitled to the ownership deduction of $471.  This result is consistent with the Court's views expressed in Phillips.

**IV. CONCLUSION**

In accordance with the foregoing, the Court shall enter an order overruling the Chapter 13 Trustee's objection and denying the Debtor's Motion for an Evidentiary Hearing. The Court shall order the Debtor to file an amended Chapter 13 plan to address proofs of claim to which he did not object.

By the Court,

_____
Joan N. Feeney
United States Bankruptcy Judge

Dated: June 9, 2008
cc: Janet Werkman, Esq., Carolyn Bankowski, Esq. U.S.Trustee